IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DUSTIN MOSER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 15-cv-1516 |
| | ) | |
| v. | ) | |
| | ) | United States District Court |
| BYUNGHAK JIN, M.D., IRMA VIHLIDAL, H.C. Administrator; ROBERT D. GILMORE, Superintendent, SCI Greene; CHRISTOPHER H. OPPMAN, Bureau of Health Care Services; and JOHN E. WETZEL, Secretary of Corrections, | ) ) ) ) ) ) ) ) | Cathy Bissoon<br><br>United States Magistrate Judge<br>Cynthia Reed Eddy |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Corrections Defendants' motion to dismiss (ECF No. 18) be granted on the ground that Plaintiff has failed to allege sufficient personal involvement on the part of Defendants Wetzel and Oppman, and the complaint be dismissed in its entirety against these two defendants. It is further recommended that the motion to dismiss be denied as to Defendants Gilmore and Vihlidal.

It is further recommended that Dr. Jin's motion to dismiss (ECF No. 29) be denied.

**II.     REPORT**

Plaintiff Dustin Moser ("Plaintiff" or "Moser") is a state prisoner in the custody of the Pennsylvania Department of Corrections and is currently incarcerated at the State Correctional Institution at Greene ("SCI-Greene"). He filed this *pro se* civil rights action under 42 U.S.C. § 1983 and alleges violations of his federal constitutional rights under the Eighth and Fourteenth

1

Amendments to the United States Constitution. Generally, he alleges that Defendants were and continue to be deliberately indifferent to his serious medical needs.

Defendants are John E. Wetzel, Secretary of Corrections; Christopher H. Oppman, Bureau of Health Care Services; Robert D. Gilmore, Superintendent, SCI-Greene; and Irma Vihlidal, H.C. Administrator at SCI-Greene (collectively referred to as the "Corrections Defendants") and Byunghak Jin, M.D., facility medical director at SCI-Greene.

The Corrections Defendants filed a motion to dismiss ( ECF No. 18) and Dr. Jin filed a motion to dismiss. (ECF No. 29.) Plaintiff responded in opposition to both motions. (ECF Nos. 26 and 39.) The motions are now ripe for review.

A.   **Factual Background**

The following allegations are included in Plaintiff's Complaint and are accepted as true and all reasonable inferences are drawn in a light most favorable to Plaintiff. *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). [1]

On June 20, 2012, Moser injured his left knee while playing softball at SCI-Greene. He was taken to SCI-Greene's medical department and examined by medical staff, where his knee was wrapped, he was given a pair of crutches and a knee brace, and sent back to his cell. The next day, Moser was examined by Ms. Trimai, a member of the medical staff at SCI-Greene. An x-ray was completed which showed no abnormalities. Ms. Trimai scheduled Moser for a follow up examination with Defendant Jin, the Medical Director for SCI-Greene. Dr. Jin examined

---

[1]   Additionally, "[i]n deciding motions under Rule 12(b)(6), courts may consider 'document[s] *integral to or explicitly relied* upon in the complaint,' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prod. Liabl. Litig. (No. VI)*, — F.3d —, 2016 WL 2849331, *5 n.7 (3d Cir. May 16, 2016) (emphasis in original, internal citations omitted). Attached to the Complaint are selected pages from two grievances filed by Plaintiff, Grievance No. 418586 and Grievance No. 451363. The Court has considered these documents in deciding the pending motions to dismiss.

Moser on July 20, 2012, and at that time renewed Moser's prescription for a knee brace for an additional five (5) months and ordered an orthopedic consult.

Plaintiff began treatment with a physical therapist in approximately January 2013. According to Moser, the physical therapist recommended an MRI for a possible torn ACL and stated that Moser would need surgery to repair his knee. Moser was examined again by Dr. Jin on March 6, 2013. Plaintiff alleges that during that examination, Dr. Jin stated that he would not recommend any further treatment and that because Plaintiff "is serving a life sentence he wasn't going anywhere, that he did not need to be active, and therefore didn't need to have his knee fixed." Complaint at 4-5. Plaintiff filed a second grievance, and it was after this round of the grievance process that "Dr. Jin was forced to re-evaluate his condition." Plaintiff was taken to an outside hospital for an MRI and an orthopedic specialist noted that Moser's ACL was "completely detached or torn, that the cartilage in the knee was damaged and had to be removed as well, and, that it was due to the length of time that had passed since the injury." Pl's Affidavit at 2 (ECF No. 30-2).

In May of 2014, Moser had surgery to repair the torn ACL. According to the Complaint, the orthopedic specialist fitted Plaintiff with a permanent knee brace, but "to date Dr. Jin and the medical department at S.C.I. Greene have refused to provide [Moser] with the brace" and continue to deny him needed pain medication. *Id*.

### B. Standard of Review

#### 1. Standard of Review

Defendants have filed motions to dismiss the complaint for Plaintiff's failure to state a claim upon which relief can be granted. The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. Under Federal Rule of Civil Procedure 8, a complaint must

contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This " 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556). Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

### C. Discussion

The Court will discuss the two pending motions together, as the factual allegations asserted against the Corrections Defendants and Dr. Jin overlap.

4

1. Statute of Limitations

For the purposes of determining whether a § 1983 action is time-barred, federal courts apply the statute of limitations that would otherwise apply to a personal injury case under state law. *See Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003). In Pennsylvania, the statute of limitations for personal injury claims is two years. *Id*. (citing 42 Pa.C.S. § 5524(7)). "Under federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based.'" *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (quoting *Sameric Corp. v. City of Philadelphia,* 142 F.3d 582, 599 (3d Cir. 1998)).

The instant complaint was signed by Moser on October 21, 2015; the envelope in which the Complaint was mailed is postmarked November 13, 2015; and the Clerk's office received and docketed the complaint on November 19, 2015. Giving Moser the benefit of the prisoner mailbox rule, the Court will deem the complaint filed on October 21, 2015.[2]

Defendants argue that Moser's claims against them must be dismissed because it is clear on the face of the Complaint that Moser's alleged injuries occurred more than two years prior to

---

[2] The "prisoner mailbox rule" provides that an inmate's pleadings are deemed filed at the moment he delivers the documents to prison officials to be mailed, and not the date the documents were actually filed in court. *Houston v. Lack*, 487 U.S. 266, 275–76 (1988); *see also Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) (explaining that "a pro se prisoner's . . . petition is deemed filed at the moment he delivers it to prison officials for mailing"). Although this rule has typically been applied in circumstances involving habeas petitions, courts within the Third Circuit have extended this rule to other contexts, including § 1983 claims. *See White v. Pa. State Police*, 408 F. App'x 521, 522 (3d Cir. 2010) (finding that a prisoner receives the benefit of the mailbox rule for a § 1983 complaint).When applying the prisoner mailbox rule, many district courts will use the date the documents were signed as the presumed delivery date in cases where there is no clear record of delivery to prison officials. *Howard v. Masteron*, No. 06–5632, 2009 WL 5184476, at *1 n. 2 (E.D.Pa. 2009) ("Pursuant to the prison mailbox rule . . . [the] documents [are] filed on the date [the plaintiff] signed them.") (citing *Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003)). Plaintiff is an inmate confined at SCI-Greene and, therefore, enjoys the benefit of the prisoner mailbox rule.

the filing of the instant suit. Moser argues that the statute of limitations should be tolled while he exhausted his administrative remedies. Plaintiff contends that the Defendants prolonged the grievance process for over a year and a half.

Generally, the statute of limitations is an affirmative defense that must be pled by a defendant in the answer to the complaint. *See* F.R.C.P. 12(b); *Robinson v. Johnson,* 313 F.3d 128, 135 (3d Cir. 2002). But a complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the face of the complaint demonstrates that the complaint is untimely. *Id.* Moser's complaint, however, does not definitively demonstrate that his claims are untimely. The United States Court of Appeals for the Third Circuit, in a non-precedential decision, has noted that it may be appropriate to toll the statute of limitations during the period in which a prisoner pursues administrative remedies. *Davila v. Sheriff's Dep't,* 413 Fed. App'x 498, 502 (3d Cir. 2011); see also *Everett v. Nort*, No. 10-561, 2013 WL 1087681 *3 (W.D.Pa. Feb. 27, 2013) (concluding that because the PLRA requires administrative exhaustion, the statute of limitations may be tolled pending completion of exhaustion of the prison grievance system.), *report and recommendation adopted by* 2013 WL 1087659 (W.D.Pa. Mar. 14, 2013); *affirmed in part, vacated in part, remanded by* 547 F. App'x 117 (3d Cir. Nov. 2013); *Thomas v. Palokovich*, No. 3:11-cv-2172, 2012 WL 1079441, at *4 (M.D.Pa. Mar. 30, 2012) (same).

Here, because Moser's complaint does not indicate how long he was involved in the administrative grievance process,[3] it is possible that the tolling of the statute of limitations during

---

[3] Attached to the Complaint are selected pages from two grievances filed by Moser. The first grievance, No. 418586, initiated on 7/3/2012, complained of his medical treatment and delay in being referred to an orthopedic specialist. This grievance appears to have been denied at the first and second stages of the administrative appeal process, and upon final review, the grievance was denied on 10/3/2012, because it exceeded two pages. (See Final Appeal Decision.) On or about 3/8/2013, Moser filed a second grievance, No. 451363, again raising the lack of medical treatment for his knee and that he had yet to see an orthopedic specialist despite

that process would make his claims timely. Because of that possibility, it does not appear beyond a doubt from the complaint itself that Moser can prove no set of facts which would avoid a statute of limitations bar. Therefore, it is recommended that Defendants' arguments that the complaint should be dismissed as time barred should be denied without prejudice.

    2.    <u>Lack of Personal Involvement</u>

The Corrections Defendants argue that the complaint should be dismissed against them because it is not alleged that they had any personal involvement in the alleged violations. They assert that their only involvement stems from their supervisory positions, which is an inappropriate theory of personal liability.

A supervisor may be liable for unconstitutional acts by his or her subordinates in two general ways: (1) the supervisor, " 'with deliberate indifference to the consequences, established and maintained a policy, practice or custody which directly caused [the] constitutional harm' "; or (2) the supervisor " 'participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med., Inc.,* 766 F.3d 307, 316 (3d Cir. 2014) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004*), rev'd on other grounds sub nom. Taylor v. Barkes*, -- U.S. ---, 135 S. Ct. 2042 (2015).[4]

---

Dr. Jin's recommendation in July 2012 for an orthopedic consult. Moser's grievance was denied by the grievance officer and the facility manager. However, on July 23, 2013, the Chief Grievance Officer informed Moser that the Secretary's Office of Inmate Grievances & Appeals had reviewed his appeal and determined that input from an appropriate Central Office Bureau was required. Moser was informed that "[u]pon completion of this review, however, a determination will be made and you will be provided with a final appeal decision in writing." The limited file before the Court does not contain the final decision; however, according to Plaintiff, it was because of this second grievance that he was sent for an orthopedic consult and had surgery in May 2014 to repair the detached ACL.

[4]    In *Barkes,* the court of appeals rejected the argument that the Supreme Court's decision

A review of the complaint reveals no facts alleging personal involvement by Defendants Wetzel or Oppman under either theory. Plaintiff has not alleged that either defendant established and maintained a policy, practice or custody which directly caused the complained of constitutional harm or had knowledge of Moser's medical needs, the delay in being referred for an orthopedic consult, or the continued denial of a permanent knee brace and pain medications, or that they directed others to violate his constitutional rights. To the extent Plaintiff seeks to assert that these two defendants are automatically liable for the actions of their subordinates, this is a classic example of *respondeat superior*, and liability cannot be predicated solely on the operation of *respondeat superior*. Accordingly, the Court recommends that the claims against defendants Wetzel and Oppman be dismissed.

However, it is a much closer call with respect to Defendants Gilmore and Vihlidal. Plaintiff argues that Defendant Gilmore was aware of his medical condition, but due to Gilmore's policies and his enforcement of DOC policies, Plaintiff has not been provided the necessary fitted knee brace. As to Defendant Vihlidal, Plaintiff argues as health care administrator, she is personally responsible for the medical needs of prisoners, and that she was aware of Plaintiff's medical needs. Plaintiff also argues that these two defendants were informed of his medical needs and the ongoing violation through the grievance process, but failed to remedy that wrong.

---

in *Iqbal v. Ashcroft* abolished supervisory liability under § 1983, instead holding such liability may be imposed if the supervisor acts with the mental state necessary to establish the underlying constitutional tort. *See Barkes,* 766 F.3d at 319-20. As with this case, the underlying constitutional tort in *Barkes* was an Eighth Amendment claim for denial of medical care, for which the requisite mental state is subjective deliberate indifference, and the appellate court approved the test set forth above as the applicable standard for imposing supervisory liability based on an Eighth Amendment violation. *See id.* at 320.

Although in many cases the mere review of grievances will not establish personal involvement in an underlying violation, here Moser is really contending that Defendants Gilmore and Vihlidal were presented with a grievance that was intended to correct an <u>ongoing</u> violation, not merely the denial of a grievance that had been brought to address a discrete, past violation. "Where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly." *Harnett v. Barr*, 538 F.Supp.2d 511, 524-25 (N.D.N.Y. 2008). Plaintiff's allegations that Defendants denied his grievances which alleged ongoing constitutional violations is sufficient to defeat a motion to dismiss. *See, e.g., Romero v. Folino*, No. 13-cv-0691 (W.D.Pa. Feb. 4, 2014), *report and recommendation adopted by* 2014 WL 710025 (W.D.Pa. Feb. 25, 2014); *Whitehead v. Rozum*, No. 11-102, 2012 WL 4378193 at *2 (W.D.Pa. Aug. 7, 2012) ("In the prison setting, where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly.") (citations omitted), *report and recommendation adopted by*, 2012 WL 4370929 (W.D.Pa. Sept. 24, 2012).

Of course, discovery will likely reveal the extent to which these Defendants had actual knowledge of Plaintiff's alleged inadequate medical care. At this stage, however, the Court must assume that Plaintiff's grievances were sufficient to make Defendants aware of the alleged inadequate medical care.

2. <u>Eighth Amendment – Deliberate Indifference to Serious Medical Need</u>

The Eighth Amendment proscription against cruel and unusual punishment requires that inmates are provided with adequate medical care. To establish a violation of his Eighth Amendment right to adequate medical care, Moser must show (1) a serious medical need, and (2)

acts or omissions by prison officials that indicated deliberate indifference to that need. *Gamble v. Estelle*, 439 U.S. 897 (1978). Here, Defendants do not contest that Moser had a serious medical need; they do contest, however, Moser's allegations that they were deliberately indifferent to his serious medical need.

The United States Court of Appeals for the Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). The appellate court has also held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. *Atkinson v. Taylor,* 316 F.3d 257, 266 (3d Cir. 2003); *see also Monmouth County Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir. 1987) ("[D]eliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physical capable of evaluating the need for such treatment.'").

Defendants argue that they were not deliberately indifferent to Plaintiff's serious medical needs, but rather that Plaintiff simply disagrees with their decisions. According to the Defendants, the Complaint reflects that Moser received medical treatment, he was examined by Dr. Jin, he was given a knee brace, he was seen by a physical therapist, had an orthopedic consult, and eventually had surgery on his knee in May 2014. Dr. Jin also argues that there is no indication in the complaint that he had anything to do with the delay in sending Moser for treatment to an orthopedic surgeon.

Moser responds that he is not claiming that he never received any medical treatment; rather, he is claiming "that he has suffered continuous pain and discomfort, and emotional distress

due to the indifference shown and the amount of time elapsed between the injury and receiving the required surgery . . . ." Complaint at 12. Additionally, Moser claims to experience continual suffering due to the refusal of Dr. Jin and the medical department to permit him to wear a fitted knee brace and deny him adequate pain medication.

If the evidence establishes that Defendants Gilmore, Vihlidal and/ or Jin unnecessary delayed sending Plaintiff to a specialist or continue to deny him a needed and prescribed knee brace and pain medications, a reasonable trier of fact could conclude that Defendants were deliberately indifferent to Moser's serious medical needs. But Moser is cautioned that the mere disagreement with the course of medical treatment does not state a viable claim for relief. *Spruill v. Gillis*, 373 F.3d 218, 235 (3d Cir. 2004) ("mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation). The Court recognizes that discovery may well reveal that the alleged conduct of Defendants Gilmore, Vihlidal and Jin does not give rise to a deliberate indifference claim, but at this early stage of litigation, the allegations of the Complaint must be accepted as true and all reasonable inferences must be drawn in Moser's favor. The Court finds that Moser has alleged enough to create plausible deliberate indifference claims against Defendants Gilmore, Vihlidal and Jin and, thus, recommends that these claims should be allowed to continue beyond the Defendants' motion to dismiss.

### 5. Fourteenth Amendment – Equal Protection Clause

Defendant Jin argues that the Court should dismiss Plaintiff's allegation that Defendants' failure to provide medical treatment amounts to a violation of the Equal Protection Clause of the Fourteenth Amendment.[5] The Equal Protection Clause of the Fourteenth Amendment provides

---

[5] Only Dr. Jin addressed Plaintiff's Equal Protection Claim. Admittedly it is not clear from the Complaint whether this claim is directed only at Dr. Jin or also includes the Corrections Defendants. The Court will analyze this claim assuming that it is directed to both Dr. Jin and the Corrections Defendants.

that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. This is not a requirement that all persons be treated identically, but is instead a general direction that similarly-situated persons be treated alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). In the prison context, an inmate must show that he was treated differently from similarly situated inmates due to intentional or purposeful discrimination. *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985). "Absent the present of a fundamental right or a protected class (e.g., race), the disputed prison policy is subject to rational basis review, which requires only 'that a regulation which results in unequal treatment of an inmate bear some substantial relationship to a legitimate penological interest." *Id.* (*quoting Boyer v. Taylor*, No. 06-694-GMS, 2007 WL 2049905, at *10 (D. Del. July 16, 2007)); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987).

An equal protection claim may also be brought by a "class of one," where a plaintiff alleges that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Overly v. Garman*, 599 F. App'x 42 (3d Cir. 2015) (holding that in order to establish a class-of-one equal protection claim a plaintiff must show that (1) the defendants treated him differently than others similarly situated, (2) the defendants did so intentionally, and (3) there was no rational basis for the difference in treatment).

In this case, Moser's position is somewhat confusing. In the complaint, he seems to be suggesting that he was not treated differently than other inmates, because treatment is delayed for all inmates at SCI Greene (See Complaint at 11-12). This would clearly not support an equal protection claim as prisoners are by definition not a suspect class. *Abdul-Akbar v. McKelvie*, 239 F.3d 207, 317 (3d Cir. 2001). However, it also appears that Moser may be claiming that as a

12

"class of one" he is being denied treatment, "as opposed to others within the confines of S.C.I. Greene and all state correctional institutions within the Commonwealth of Pennsylvania who have been injured while confined and have received appropriate and timely medical treatment." *Id*. at 10. Although Defendant Jin seems to dispute this contention, and despite the somewhat opaque contours of this claim, the Court finds this claim requires some additional factual development to be fairly considered and that it would be premature to dismiss the claim at this early juncture. Accordingly, the Court recommends that the motion be denied with respect to plaintiff's equal protection claims against all defendants other than Defendant Wetzel and Oppman who, again, are not alleged to have had any personal involved in the alleged violation.

6. <u>Leave to Amend</u>

The Court notes that "[w]hen a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Grayson v. Mayview Hosp.,* 293 F.3d 103,108 (3d Cir. 2002); *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile).

Here, any attempt by Plaintiff to amend his claims against Wetzel and Oppman would be futile as it is clear that these claims are classic *respondeat superior* claims, which are not cognizable. [6]

---

[6] If it is Plaintiff's contention that it would inequitable or not futile to allow him to amend his complaint, he shall address the issue in his objections to the Report and Recommendation.

## III. CONCLUSION

In accordance with the foregoing, it is respectfully recommended that the Corrections Defendants' motion to dismiss (ECF No. 18) be granted on the ground that Plaintiff has failed to allege sufficient personal involvement on the part of Defendants Wetzel and Oppman, and the complaint be dismissed in its entirety against these two defendants. It is further recommended that the motion to dismiss be denied as to Defendants Gilmore and Vihlidal. It is further recommended that Dr. Jin's motion to dismiss (ECF No. 29) be denied.

It is further recommended that Plaintiff not be granted leave to amend his claims against Wetzel and Oppman as same would be futile.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b)(2) of the Federal Rules of Civil Procedure, and the Local Rules for Magistrates, the parties may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of it. Failure to file timely objections will constitute a waiver of any appellate rights. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

<u>s/ Cynthia Reed Eddy</u><br>
Cynthia Reed Eddy<br>
United States Magistrate Judge

Dated: October 27, 2016

cc:     DUSTIN MOSER
GJ-3837
S.C.I. Greene
175 Progress Drive
Waynesburg, PA 15370
(via U.S. First Class Mai)

Alan S. Gold
Gold & Ferrante, PC
(via ECF electronic notification)

Joseph G. Fulginiti
Department of Corrections
(via ECF electronic notification)